**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| E.J. a Minor, by and through B.J. and J.J., her Parents,   )   <br> ) <br> Plaintiffs,   ) <br> ) <br> ) <br> vs.   ) <br> ) <br> MONTANA CONTRACTORS' ASSOCIATION HEALTH CARE TRUST,   ) <br> ) <br> Defendant.   ) <br> ) <br> THE MONTANA DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES,   ) <br> ) <br> An Interested Party.   ) <br> ------------------------------------------------- ) | CV 09-133-BLG-RFC <br><br> ORDER |

In 2005, Plaintiff E.J., daughter of Plaintiffs B.J. and J.J., was severely injured during her birth. E.J.'s birth injuries resulted in permanent, severe health conditions, including brain damage, cerebral palsy and spastic quadriplegia. E.J. requires full-time care and will need a variety of healthcare services for treatment and management of her conditions.

E.J. receives assistance for her conditions through the state Medicaid program. In addition, on April 8, 2008, E.J. settled certain malpractice claims against healthcare providers involved in her birth. On June 12, 2008, by Court order, an irrevocable Special Needs Trust (SNT herein) was created to receive the proceeds from the settlement of her malpractice claims.

On July 1, 2008, after the settlement was paid and the SNT was established, E.J. became a "Covered Person" under the Montana Contractors' Association Health Care Trust ("MCAHCT") Benefit Plain (the "Plan"), the Defendant herein. MCAHCT is an employee welfare benefit plan within the meaning of section 3(1) of the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1), and is self-funded. The ERISA plan is provided through her father's employer, and has a lifetime benefits cap of $2 million.

Once E.J. became a "Covered Person" under the Plan, various providers began to file claims. In response, Plan administrator Employee Benefit Management Services Inc. ("EBMS") requested certain information about the malpractice settlement and the SNT, including a copy of the court orders directing the use of settlement funds and the dollar amount of settlement funds allocated to E.J., so that EBMS could properly process her claims pursuant to the terms of the Plan. On

October 1, 2008, the Trust Office also requested that Plaintiffs return a signed Third-Party Reimbursement Agreement.

On August 15, 2008, Plaintiffs' counsel responded to the request for information and refused to provide the requested information. On September 5, 2008, in response to EBMS's verbal request, Plaintiffs sent another letter addressing various provisions of the Plan and reiterating their demand for coverage of E.J.

On October 31, 2008, the Plan denied E.J.'s claim for coverage on the basis that it had not received: (1) documentation on what, if any, settlement funds had been received and how the court had directed use of such funds; and (2) Plaintiffs' and their counsel's signatures on a Third-Party Reimbursement Agreement.

On November 13, 2008, Plaintiffs filed a Second-Level Appeal, on the grounds that no pertinent information had been withheld and there was no right of reimbursement.

On December 9, 2008, the Plan's denial was upheld by the MCAHCT Board of Trustees. The Board of Trustees found that without the information and documents requested from Plaintiffs, the Trust could not make a proper determination about whether E.J.'s medical claims were covered under the terms of the Plan. The December 12 letter notifying Plaintiffs of this result enclosed a memorandum and stated grounds for denial as "failure to provide the requested

-3-

information and documents."  The cover letter indicated that the Board would work with Plaintiffs to permit disclosure of the information in a manner that would protect its confidentiality, including court review of their denial.

On January 15, 2009, after the Trustees had affirmed EBMS's denial of E.J.'s medical claims, Plaintiffs then offered to provide some of the requested information to the trust; subject to specific conditions, requirements, restrictions, and signed addendums.  Additional correspondence was exchanged between the parties in February wherein Plaintiffs offered to sign a Third-Party Reimbursement Agreement that did not expand reimbursement rights beyond those existing under the Plan and existing law.

On October 14, 2009 Plaintiffs filed their Complaint in this action, seeking review of the Plan's denial of benefits and a declaration of their rights.

## STANDARD OF REVIEW

Plaintiffs' claim is brought pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), which states that a civil action may be brought "to recover benefits due him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  The Supreme Court ruled in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), that a court's role is limited to reviewing the Plan's decision to deny benefits under the abuse of

discretion standard where the plan grants the administrator the discretionary authority to make the final and conclusive determination of the claim.

The Ninth Circuit reviews a plan administrator's discretionary authority to determine eligibility or interpret the terms of the plan under an arbitrary and capricious standard of review.  *See Jones et al. v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480, 481 (9th Cir. 1990); *Madden v. ITT Long Term Disability Plan for Salaried Employees; Fed. Electric Corp.,* 914 F.2d 1279, 1283 (9th Cir. 1990); *Harper v. Unum Life Ins. Co. of America,* 621 F. Supp. 2d 931, 948-949 (E.D. Cal. 2008).  Pursuant to that analysis, this Court must determine whether the Trustees' decision was arbitrary and capricious.  *See Schikore v. BankAmerica Supplemental Retirement Plan,* 269 F.3d 956, 961 (9th Cir. 2001); *Taft v. Equitable Life Assurance Society,* 9 F.3d 1469, 1471 n. 2 (9th Cir. 1993).

An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan,* 410 F.3d 1173, 1178 (9th Cir.2005).

In this case, the Plan grants the Trustees discretionary authority to interpret the Plan provisions and make determinations concerning eligibility of benefits. The Plan states:

> The Plan Administrator has the responsibility and the full and absolute discretion and authority to control and manage the operation and administration of the Plan, including without limitation, the authority to:
> a. make and enforce such rules and regulations as it shall deem necessary or proper for the efficient administration of the Plan;
> b. interpret the provisions of this Plan Document and Summary Plan Description and any writing, decision, instrument or account in connection with the operation of the Plan or otherwise;
> c. determine all considerations affecting the eligibility of any individual to be or become a Covered Person;
> d. determine eligibility for and amount of benefits under the Plan for any Covered Person;
> e. determine all other questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the administration or operation of the Plan;
> f. authorize and direct all disbursements of benefits under the Plan;
>
> The decision of the Plan Administrator shall be final and binding upon all persons dealing with the Plan or claiming any benefit under the Plan.

(AR D00052).

The Ninth Circuit adheres to the rule that a district court is limited to the administrative record when the court is reviewing a case on the merits for an abuse

-6-

of discretion. *See Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan,* 349 F.3d 1098, 1110 (9th Cir.2003) ("While under an abuse of discretion standard our review is limited to the record before the plan administrator, this limitation does not apply to de novo review." (citation omitted)); *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090-91 (9th Cir. 1999) (holding that the standard of review informs the amount of evidence that a district court may consider); *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan,* 46 F.3d 938, 944 (9th Cir.1995) (holding that the district court has discretion to allow evidence that was not before the plan administrator "only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review" (internal quotation marks omitted)).

## ANALYSIS

**A.   The Trustee's Decision to Deny E.J.'s Medical Claims was not Arbitrary and Capricious in Light of Plaintiffs' Refusal to Provide the Required Documentation and Information Necessary to Determine E.J.'s Entitlement to Benefits Under the Plan.**

The Trustees upheld the EBMS's determination that E.J.'s claim should be denied because Plaintiffs failed to return a signed Third-Party Reimbursement Agreement and did not submit the requested information, which included a copy of

the SNT, a copy of the court orders directing the use of settlement funds, and the dollar amount of settlement funds allocated to E.J.

In order to constitute "an abuse of discretion a trustee's factual findings must be 'clearly erroneous.'" *Jones*, 906 F.2d at 482. Given the unambiguous terms of the Plan in this case, the Trustees' decision was not clearly erroneous or arbitrary and capricious.

The Plan clearly states that the Trust is not required to pay any claim when there is evidence of third-party liability unless the Covered Person and the Covered Person's attorney signs the Plan's Third-Party Reimbursement Agreement. The Plan provisions requiring the signing of a Third-Party Reimbursement Agreement are set forth in Article XII (General Provisions) of the Plan. Article XII discusses the "Trust's Rights of Recover, Reimbursement, Subrogation and Offset," and states, in pertinent part:

> By enrollment in this Plan, a Covered Person agrees to the provisions of this section *Trust's Rights of Recovery, Reimbursement, Subrogation and Off-Set* as a condition precedent to receiving benefits under this Plan. If a Covered Person fails to comply with the requirements of this section, the Trust may reduce, deny or eliminate benefits otherwise available under the Plan.
> . . .
> The Following Paragraphs Apply to Both the Trust's Right of Reimbursement and the Trust's right of Subrogation:
> 1.   The Trust is not required to pay any claim under the Plan when there is evidence of liability of a third party unless the Covered

-8-

>   > Person (and the Covered Person's attorney, if the Covered Person or their legal representative has retained an attorney) signs the Plan's third-party reimbursement agreement acknowledging and agreeing to be bound by the Covered Person's obligations in this section *Trust's Rights of Recovery, Reimbursement, Subrogation* and Off-Set. However, the Trustees, in their discretion, may authorize payment of benefits while the liability of a third party is being legally determined. If the Covered Person and/or their attorney, if applicable, does not sign the Third-Party Reimbursement Agreement after they are requested to sign, the Plan's right of recovery through Reimbursement and/or Subrogation remains in effect regardless of whether the third-party reimbursement agreement is signed.
>
> . . .
>
> 5.  The Covered Person or their attorney, if applicable, will not act, fail to act, or engage in any conduct directly, indirectly, personally or through third parties, either before or after the Trust pays benefits that may prejudice or interfere with the Trusts' rights to recovery hereunder. The Covered Person will not conceal or attempt to conceal the fact that recovery has occurred or will occur.

(AR D00057).

There is no dispute that E.J. suffers from serious injuries caused by third-party health care providers at her birth. However, Plaintiffs have refused to sign the Third-Party Reimbursement Agreement, as required by the Plan. The Trustees' decision to uphold the denial of E.J.'s claims based on Plaintiffs' refusal to cooperate and provide a signed Third-Party Reimbursement Agreement is not arbitrary or capricious. The Plan terms clearly dictate that the signing of the Third-Party

Reimbursement Agreement is "a condition precedent to receiving benefits under this Plan."

Additionally, language in the Plan specifically addresses situations which require coordination with others plans. Article IX Coordination of Benefits defines "Other Plan" as including compensation or benefits that a Covered Person receives for eligible medical expenses from any third-party source, i.e. Third-Party Compensation. The Plan provides that if the "Other Plan" is primary, then the Plan is secondary and pays a reduced amount. The Plan terms mandate that Covered Persons under the Plan provide the information necessary for the Claims Administrator or Plan Administrator to implement this section. The Plan specifically states:

> **Application**
>
> The section *Coordination with Other Plans* is intended to prevent the payment of benefits that exceed the maximum payments for Eligible Charges. It applies when a Covered Person is also covered, may be covered or could be covered, by any Other Plan(s). If this Plan is primary to the Other Plan(s), this Plan pays its benefits in full, as if there were no Other Plan. If the Other Plan(s) is primary, this Plan is secondary and pays a reduced amount that, when added to the benefits payable by the Other Plan(s), will not exceed 100% of Allowable Expenses. . .
>
> The benefits that are payable under an Other Plan include the benefits that would have been payable had a claim been made under the Other Plan for the benefits. If needed, the

>   authorization is hereby given this Plan to obtain the information as to the benefits or services available from the Other Plan or Plans, or to recover overpayments.
>
>   **Other Plan**
>   . . .
>   "Other Plan" also includes:
>   >   a.   any compensation and/or benefits a Covered Person receives for his/her eligible medical expenses from any third-party source ("Third Party Compensation");
>
>   *General Rules*
>   >   j.   <u>Right to Information</u> . . . Any person claiming benefits under this Plan shall furnish to the Claims Administrator or Plan Administrator such information as may be necessary to implement this section *Coordination with Other Plans*.

(AR D00049-D00051).

Article XII General Provisions of the Plan also contains a mandatory provision requiring Covered Persons to furnish to the Plan Administrator (within 90 days of a request) any information that may be necessary to administer this Plan, including but not limited to court orders. Article XII specifically states, in pertinent part:

>   **Right to Information**
>   . . . Any person claiming benefits under this Plan shall furnish to the Plan Administrator or the designated agent such information (i.e., birth, death or marriage certificates, court orders, divorce decrees, adoption papers, tax returns, etc.) as may be necessary to administer this Plan, within 90 days of the request in order for the claim to be eligible.

-11-

(AR D00058).

There is no dispute that Plaintiffs received monetary compensation from third-party sources through Settlement Agreements they entered into with health care providers who caused E.J.'s injuries at birth. This compensation from third-parties clearly falls into the definition of "Other Plan," as defined by the Plan terms.

It is also undisputed that Plaintiffs refused to provide the information and documentation requested by the Plan Administrator in order to determine the eligibility of E.J.'s claims. The Plan Administrator requested the court orders directing the use of settlement funds, a copy of the SNT and the dollar amount of the settlement funds allocated to E.J. This information was necessary for the Plan Administrator to make a determination as to whether E.J.'s medical claims were covered under the specific terms of the Plan.

Based upon Plaintiffs failure to provide the required documentation, the Trustees' decision to deny E.J.'s claim for benefits was entirely reasonable and necessary. The terms of the Plan mandated that Plaintiffs provide such information.

Article VIII of the Plan outlines general exclusions and limitations of the Plan, specifically excluding from coverage medical expenses for which a Covered Person receives or would be entitled to receive benefits from a third-party or "other plan."

-12-

Article VIII states that benefits received from a third-party or "other plan" that are received by the Covered Person must be used first, as the primary coverage, prior to the Plan paying for any expenses. Subsection av of Article VIII provides the following is excluded from coverage:

> . . . medical expenses . . . to the extent the Covered Person receives, or would be entitled to receive, benefits from a third party, or from insurance or any other policy or plan . . . Such benefits received or that could be received by the Covered Person shall be used first, as the primary coverage for such expenses, prior to this Plan paying for expenses.

(AR D00048).

Plaintiffs' interpretation of the Plan relies on the provision of the Plan wherein it states: "if a Covered Person is also entitled to and covered by Medicaid, this Plan is primary and Medicaid is secondary." This Plan provision must be considered in conjunction with the other provisions in the Plan, including exclusion provisions, third-party reimbursement provisions, and the coordination of benefit provisions. The Plan clearly states that Plaintiffs must sign and return the Third-Party Reimbursement Agreement as a "condition precedent to receiving benefits under this Plan" and that Plaintiffs must produce documents regarding their third-party settlements. Failure to comply with this provision is a reasonable basis for the Trustees to deny benefits to E.J.

-13-

Plaintiffs also argue that because they settled with the third-party tortfeasors before E.J. became a Covered Person under the Plan, the Plan is not entitled to any reimbursement interest for claims that it may pay on her behalf that were the result of the third parties' negligence or wrongdoing. This is an incorrect interpretation of the Plan. The Plan's "Right of Reimbursement" provision provides that a Covered Person must reimburse the plan for any money the Covered Person receives from a liable third-party for medical expenses resulting from the accident, injury, condition or illness caused by the third-party. The provision specifically states:

> The Covered Person must reimburse or agree to reimburse the Trust, in first priority, from any money recovered or reimbursed from a liable third party, for the amount of all money the Trust paid or will pay to or on behalf of the Covered Person for medical expenses resulting from accident, Injury, condition, or Illness.

(AR D00056)

Contrary to Plaintiffs' assertions, there is no language in the Plan that limits the Plan's right to third-party reimbursement recovered by the Covered Person after the Plan becomes effective. The Trustees' interpretation of the Plan's language is reasonable.

Plaintiffs express concern that the TPRA would have conflicted with the substantive and procedural requirements of ERISA. Specifically, since 1986, an

-14-

ERISA statute has mandated that state laws and regulations enacted in compliance with the Medicaid scheme, dictating that ERISA plans are primary to Medicaid and that a SNT is the payer of last resort, are not preempted by ERISA.  29 U.S.C. § 1144(b)(8).  Plaintiffs also state that the TPRA retroactively asserted a right to past settlement proceeds and would have required Plaintiffs to initiate litigation against the SNT.

The TPRA actually states that "if any recovery is made from any reasonable party" the Trust's recovery is reduced by its pro rata share of attorney fees and costs. (AR D00042).  The TPRA did not impose any new requirements on Plaintiffs, as the Plaintiffs had already initiated lawsuits against the responsible third-party tortfeasors. The TPRA did not require Plaintiffs to initiate litigation against the SNT itself.  The TPRA states:

> In exchange for the Trust's agreement to pay the Medical Expenses, Covered Person agrees to proceed by claim or appropriate legal action against the third party or parties . . . believed to be liable. . .

(AR D00041).  The SNT is not a third-party tortfeasor subject to a legal action by Plaintiffs.

Plaintiffs have failed to show that the TPRA broadens the Plan's rights beyond those set forth in the Plan itself.  It is not arbitrary and capricious for the Trustees to

require Plaintiffs to sign the TPRA as a condition precedent to obtaining benefits under the Plan.

## CONCLUSION

The Trustees' decision to deny E.J.'s claim for benefits under the Plan was not arbitrary and capricious in light of the Plan's provisions and Plaintiffs' refusal to provide the requested information and documentation necessary to determine her entitlement to benefits under the Plan.

Defendant's Motion for Summary Judgment (*doc. #29*) is **GRANTED** and Plaintiffs' Motion for Summary Judgment (*doc. #25*) is **DENIED**. The Clerk of Court is direct to notify the parties of the making of this order, enter Judgment in favor of Defendant, and close this case accordingly.

DATED this 27th day of September, 2010.

>*/s/ Richard F. Cebull*_____
>RICHARD F. CEBULL
>U.S. DISTRICT COURT JUDGE